[No. 17933. Department Two. July 17, 1923.]

*In the Matter of the Guardianship of* HENRIETTA GREEN, *Incompetent.*

LORETTA P. MILLER *et al., Respondents,* v. HENRIETTA GREEN *et al., Appellants.*[1]

GUARDIAN AND WARD (1)—APPOINTMENT—JURISDICTION OVER INCOMPETENTS—STATUTE—"AND" MEANING "OR". Rem. Comp. Stat., § 1565, providing for the appointment of guardians for "minors, insane and mentally incompetent persons" authorizes the appointment for a mentally incompetent person without proof of insanity; since 'and" should be construed as "or."

SAME (3)—PROCEEDINGS FOR APPOINTMENT—EVIDENCE OF INCOMPETENCY. Findings that a person was so mentally incompetent as to need a guardian are sustained where she was seventy-one years old, had suffered a paralytic stroke and was unable to speak and had periods when she seemed entirely bereft of mentality.

SAME (2)—PERSONS WHO MAY BE APPOINTED—QUALIFICATIONS. The court should not appoint as a guardian of a mentally incompetent person one who was objectionable to the incompetent, living at a distance, thus adding to the cost of necessary personal attention, and who solicited loans from the incompetent.

[1]Reported in 216 Pac. 843.

Appeal from an order of the superior court for Pierce county, Askren, J., entered September 30, 1922, appointing a guardian for an incompetent person. Reversed.

*H. W. Lueders,* for appellants.
*Burkey, O'Brien & Burkey,* for respondents.

PER CURIAM.—On September 11, 1922, a petition was filed in the superior court of Pierce county, praying for the appointment of a guardian for the person and estate of Henrietta Green; the petitioners alleging that Mrs. Green was mentally incompetent and incompetent to care for herself or to manage her property. After due notice, a hearing was had in which the application was contested, resulting, however, in the appointment of Nellie R. Payne, a resident of King county, as such guardian. This is an appeal on behalf of Mrs. Green from the order of appointment.

The first contention is that the appellant is not of that class of persons for whom the statute provides for the appointment of a guardian. It is argued that, under the code as it is presently written (Rem. Comp. Stat., § 1565) [P. C. § 9897], vesting power in the superior courts to appoint "guardians for the persons and estates, or either thereof, of minors, insane and mentally incompetent persons," that a person must be found to be both insane and mentally incompetent before the court has power to act, and that Mrs. Green was not proved nor found to be insane. This contention is founded on the use by the legislature of the conjunctive "and" instead of the disjunctive "or", in the quoted portion of the statute above cited. But we cannot think the contention merits serious argument. An insane person must of necessity be mentally incompetent, and, if the appellants' construction be sound,

the whole idea would be expressed by the word "insane," rendering the subsequent phrase mere tautology. But that this was not the legislative intent, the subsequent provisions of the statute make clear. In all subsequent instances, where the words are conjoined and the evident grammatical sense requires it, the disjunctive instead of the conjunctive is used. Plainly, we think, there are three classes of persons for whom the legislature intended to provide guardians, and, if it be necessary to accomplish this intent, the word "and" may be read as meaning "or."

On the question whether Mrs. Green is so far mentally incompetent as to need a guardian, we are inclined to agree with the conclusion of the trial court. Mrs. Green is in age past her seventy-first year. Some four years ago, she suffered a paralytic stroke, since which time she has been unable to speak, and has so far suffered from physical decline as to need almost constant attention. She at times has hallucinations, and during such periods seems to be entirely bereft of mentality, and when at her best she has not the normal mentality of a person of her age. She must of necessity transact her business through another, and we think the court well determined that this other should be subject to the control of the court.

But we cannot think the court appointed a proper person for such guardian. Mrs. Green herself was put upon the witness stand, and while the reporter indicated in his notes that many of her answers were wholly unintelligible to him, he does report that, when asked if she desired Mrs. Payne, the court's appointee, appointed as her guardian, she was able to register a negative. There are, however, other reasons why the appointment seems ill-advised. Mrs. Payne lives at a considerable distance from the place of residence of

Mrs. Green, and proper attention to her personal needs and the needs of her property must be attended with much additional cost over that which a local appointee would necessarily incur. Again, while the appointee testified that Mrs. Green was so far incompetent as to "absolutely" need some one to look after her person and business, only about a month before she found her sufficiently competent to make a loan of money, and that at that time she did solicit and receive a loan of money from her, although there is no evidence that Mrs. Green's mental condition had materially changed between the time of the loan and the time the applicant testified.

While we realize that the matter of the selection of a guardian is largely within the discretion of the trial court, and that the appellate court should not interfere with the court's selection unless grave reasons exist therefor, we feel that, in this instance, such reasons do exist, and that another selection should be made.

The order is reversed, and the cause remanded with instructions to revoke the appointment of Mrs. Payne, and to appoint some suitable and discreet person in her stead. Neither party will recover costs in this court.